[Crim. No. 1555. Second Appellate District, Division One.—February 23, 1928.]

THE PEOPLE, Respondent, v. JAMES ALLEN CLAYTON, Appellant.

John F. Groene for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction, as well as from an order denying his motion for a new trial, as to each of six counts in an information in which he was charged with the crime of robbery and as to each of two counts therein in which he was charged with feloniously driving an automobile in the absence and without the consent of the owner.

The first point advanced by appellant is that prejudicial error was committed in that the action was not brought to trial within sixty days after the information was filed against defendant.

Subdivision 2 of section 1382 of the Penal Code provides in effect that, unless good cause to the contrary be shown, the trial court must order an action dismissed "if a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the . . . filing of the information." Briefly, the facts relating to the proceeding in the action preceding the trial were that on April 25, 1927, defendant was arraigned for plea and at that time, on motion of defendant, was given until April 28th to plead to the information against him, which time to plead was from time to time postponed until May 9th, when defendant entered his plea of not guilty, and the trial was then set for June 20th, which date was fifty-nine days after the information was filed. On June 20th counsel for defendant was engaged in the trial of an action in a department of the superior court other than that in which

the action against defendant was pending, but nevertheless in the case against defendant appeared in open court, objected to a postponement of the trial and announced that probably in the afternoon of that day, or on the day following, he would be ready to proceed with the trial. Defendant personally also objected to a continuance, and stated that he was willing to proceed with the trial in the absence of his attorney. It further appeared that one of the victims of one of the robberies with which defendant was charged was confined to his bed, either through illness or by reason of his observance of some religious rite in connection with the recent death of his wife; and that the trial court on that day was "already engaged in a trial," and, as stated by the trial judge, there was no "possibility of having it (defendant's case) tried to-day; we haven't any place to try it." Thereupon, the trial of the action against defendant was postponed by the court until June 27th, at which time, over the objection of defendant, and in opposition to his motion for dismissal of the action, it went to trial.

As hereinbefore set forth, the statute (subd. 2, sec. 1382, Pen. Code), requires a dismissal of an action not brought to trial within sixty days after the filing of the information, only in the event that no good cause to the contrary be made to appear.

In the case of *People* v. *Benc,* 130 Cal. 159 [62 Pac. 404], it is held that where the reason for not bringing the case to trial within the sixty-day period is that the trial court is engaged in the trial of another action, "good cause" is shown. To the same effect are *People* v. *Henry,* 77 Cal. 445 [19 Pac. 830]; *People* v. *Camilo,* 69 Cal. 540 [11 Pac. 128] *People* v. *Vasalo,* 120 Cal. 168 [52 Pac. 305]; *Murphy* v. *Superior Court,* 53 Cal. App. 6 [200 Pac. 483].

When, in addition to the fact that on the day set for the trial of the action against defendant the trial court was "already engaged in a trial," it is considered that one of the principal witnesses for the prosecution was confined to his bed, and that the attorney representing defendant was engaged in the trial of another action with no certainty of being released therefrom until the day following the date on which the trial in defendant's case had been set, it becomes clear that the condition of "good cause" re-

quired by the statute before the time of trial might be extended beyond the sixty-day period was shown, and that as a result therefrom the judge of the trial court was justified in ordering the postponement of the trial to which objection is here made.

■ It is further contended by appellant that error was committed by the trial court in permitting to be read in evidence at the trial the testimony given by certain witnesses at the preliminary hearing in the justice court.

Subdivision 3 of section 686 of the Penal Code provides in part that "in a criminal action the defendant is entitled: . . .

"3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he . . . cannot with due diligence be found within the state; . . . "

As a foundation for the admission of the evidence in question it was shown that one of the absent witnesses was not a permanent resident of this state, and that within four or five weeks preceding the date of the trial in the superior court he had returned to his home in the city of Detroit, Michigan. It also appeared from the testimony of the absent witness, given at the preliminary examination of defendant in the justice court, that at such time he was a visitor in the city of Los Angeles; that he was engaged in the real estate business in the city of Detroit; and that "in about six weeks" he expected to return to said city. The foundation laid by the prosecution for reading the testimony given by a second witness at the preliminary examination of defendant consisted of a showing that respective inquiries at the former place of employment of the witness, as well as at the place of her residence while she was temporarily living in Los Angeles, elicited the information that the witness had returned to her home in Arizona, and that letters which came addressed to the witness in Los Angeles were regularly forwarded to her at her home address in the state of Arizona.

In such circumstances, and especially in view of the rule that the determination of whether a sufficient foundation has been laid for the purpose of admitting testimony received at a preliminary hearing of a charge against a defendant lies largely within the discretion of the trial judge, it is clear that in the instant matter, so far as such witnesses are concerned, the ruling of which complaint is made cannot be disturbed by this court. (*People* v. *Caballero,* 41 Cal. App. 146 [182 Pac. 321]; *People* v. *Padilla,* 81 Cal. App. 528 [254 Pac. 585]; *People* v. *Lederer,* 17 Cal. App. 369 [119 Pac. 949]; *People* v. *Nelson,* 85 Cal. 421 [24 Pac. 1006]; *People* v. *Witty,* 138 Cal. 576 [72 Pac. 177]; *People* v. *Lewandowski,* 143 Cal. 574 [77 Pac. 467]; *People* v. *Plyler,* 126 Cal. 379 [58 Pac. 904].)

As to a third witness, whose testimony given at the preliminary examination was read to the jury, the foundation for its introduction apparently consisted merely of a statement said to have been contained in a letter received by the prosecution from the sheriff of Kern County to the effect that the witness had departed from this state. As the letter is not made a part of the record on this appeal, this court has no ready means of determining whether any basis existed for the conclusion reached by the sheriff of Kern County that the witness either had ever departed from this state or that he was not within the state at the time the trial took place. While it may be that the evidence was insufficient as a foundation upon which to base the discretion exercised by the trial judge in admitting the evidence given by the witness at the preliminary examination of defendant, in view of defendant's confession wherein he admitted practically all the facts to which such witness testified, as well as the additional circumstance that a companion of the absent witness fully corroborated his testimony, the error (assuming it to be such) becomes of no importance, as undoubtedly without such evidence no conclusion other than the guilt of the defendant as to the count covered by such evidence could have been reached by the jury.

As hereinbefore stated, in each of six counts of the information defendant was charged with the commission of the crime of robbery. With reference to count one of the

information, the evidence in substance shows that the victim of the robbery was carrying under his arm a "strong box" containing $4.13 in cash. In answer to a question propounded by the district attorney to the witness as to how the box was taken from him by defendant, the witness replied: "Well, it was knocked out of my arm in two attempts. The first time it did not fall, I caught it with my left hand, but the second time it fell and as soon as it fell—it was all before I could recall what happened, almost—the man grabbed it and was running away from me."

The victim then pursued, overtook, and overpowered defendant and held him until he was taken into custody. Before the trial started in the superior court defendant moved the court to dismiss the action against him so far as count one was concerned, on the ground that at the preliminary hearing the evidence showed that grand larceny only had been committed, and not the crime of robbery. The motion was denied and such ruling is here assigned as error.

By section 211 of the Penal Code robbery is defined as the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

It will be noted that to constitute the crime of robbery the elements of "force or fear" must be present. The attention of this court is directed to no evidence which would indicate that the crime was "accomplished by means of . . . fear"—the only question being as to whether the circumstances of the commission of the offense as hereinbefore set forth amounted to a "felonious taking of personal property in the possession of another, from his person, . . . by means of force, . . . "

In the case of *Montsdoca* v. *State,* 84 Fla. 82 [27 A. L. R. 1291, 93 South. 157], it is said: "The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance (citing cases)."

In *People* v. *Campbell,* 234 Ill. 391 [123 Am. St. Rep. 107, 14 Ann. Cas. 186, 84 N. E. 1035], the evidence showed that the defendant snatched a diamond stick-pin from the shirt-front of the complaining witness. It was held that where

the article was so attached to the person or to his clothing as to necessitate resistance, however slight, in such circumstances the taking constituted robbery (citing authorities).

In *Stockton* v. *Commonwealth*, 125 Ky. 268 [101 S. W. 298], the syllabus is as follows: "The two defendants met the prosecuting witness, when one of them asked him if he could change a $10 bill, holding out his hand, containing some silver. When the prosecuting witness held out the bill to exchange for the silver, the other defendant snatched it out of his hand, and both defendants ran away. Held, that they were guilty of robbery."

In *Brown* v. *Commonwealth*, 135 Ky. 635 [21 Ann. Cas. 672, 117 S. W. 281], a part of the syllabus is as follows "Evidence that one of the defendants asked prosecutor for a dime with which to buy beer, and that, on the latter's drawing some money from his pocket, the other defendant suddenly and forcibly wrenched the money from prosecutor's hand, and fled with it, authorized a conviction for robbery, and an instruction on larceny was properly refused."

In view of the foregoing authorities, it must be held in the instant matter that the crime committed by defendant constituted robbery within the meaning of the statute.

Appellant predicates further error in the trial of the action against defendant in that the following instruction requested by defendant was refused by the court:

"The court further instructs the jury that before you can find defendant guilty of robbery under count I of the information, you must believe from all the evidence that defendant did take the tin box from the possession of L. R. Lueck by means of force and fear; that such force and fear must have been real and direct, and that such force and fear was caused by means of some dangerous weapon, and the mere fact that some time after the commission of said offense some weapon was found concealed among the clothes of defendant, is not sufficient in law upon which to base a charge of robbery against defendant.

"If the jury believe from the evidence that defendant did not use force or fear in the taking of the said tin box from said L. R. Lueck, you must then find defendant guilty of larceny only, and fix the degree of larceny committed."

Adverting to the language contained in section 211 of the Penal Code, it will be noted that the statute is silent as to the method which may be employed by the robber in committing the crime by which he either exerts force upon or produces fear in his victim. No authority is cited by appellant for including within the proposed instruction the proposition that in committing the crime of which defendant was specifically charged it was necessary that the force applied by defendant must have been "real and direct," and that it "was caused by means of some dangerous weapon." In some circumstances, such a construction of the statute might possibly relieve a defendant from conviction of robbery in the first degree where, for example, if the "weapon" should consist of a small toy pistol made of soft rubber, or some other equally harmless material. In such case the "force" might be neither "real" nor "direct," nor might such a "weapon" necessarily be "dangerous"; nevertheless, if by its use, the victim of the robbery were put in fear, it is probable that the offense defined in the statute would be committed. ▇ But aside from such considerations, which are sufficient justification for the refusal on the part of the trial court of the proposed instruction, the jury was instructed in effect that if it believed from the evidence beyond a reasonable doubt that by means of force or fear and against the will and consent of the victim of the robbery, the defendant feloniously took from such person or from his immediate presence the property described in the information—then the jury should find the defendant guilty, etc. It is therefore manifest that in any event the defendant was in nowise harmed by the refusal of his requested instruction in that regard.

Misconduct by the deputy district attorney in charge of the prosecution of the case is also urged by appellant as a ground for reversal of the judgment and the order denying his motion for a new trial. It appears that, over the objection of defendant, with exception reserved by him to the ruling of the court thereon, the deputy district attorney, in part, made use of the following language in his argument to the jury:

"This defendant here, James Clayton, is the type of criminal—a potential murderer. . . . I wonder if you have

ever seen a more cool, cold-blooded type of criminal than you have in this defendant. He sat on there in a nonchalant manner and committed wilful and deliberate perjury, just the same as if he was going out to order a lunch; he thinks nothing of it—from your observation of this defendant—nothing about it at all. He will go out here, as the evidence shows, with a gun; he will even invade the sanctity of a home. . . . If you don't call this what you might term an arch criminal, I don't know where we are going to find an arch criminal. . . . This is a concocted and deliberate attempt at perjury. Talk about perjury, every statement out of that man's mouth, with the exception of his name, was perjury. . . . There is the type you are dealing with; there is the type. In order to keep this community safe, we should put such men in San Quentin and keep them there forever . . . and we have here a man who is what you might term a wholesale criminal; not only what you might term, if there is such a thing in crime as a retail criminal, but a wholesale criminal. This man certainly can be dubbed and termed a wholesale arch criminal.''

Following an objection by defendant to the remark made by the deputy district attorney that ''this defendant, here, James Clayton, is the type of criminal—a potential murderer,'' the judge of the trial court ruled as follows: ''The objection will be overruled. Of course the jury understands that what counsel say is not evidence in the case, and merely the conclusions that counsel is drawing from the evidence; that the jury is to decide the case from the evidence adduced upon the stand, and they are not to take the remarks of counsel as evidence in the case.''

All other objections of defendant were overruled by the court without comment thereon or instruction to the jury.

It is clear that such statements made by the deputy district attorney had no place in a well-ordered argument. They constituted nothing less than invective and were probably uttered with no intention other than that of influencing the passions of the jury against the defendant. As such they were wholly unjustifiable. It must be remembered that above everything else in criminal procedure a defendant is entitled to a fair trial. The facts as portrayed by the evidence, together with proper inferences deducible

therefrom, constitute the sole basis for legitimate argument. For the deputy district attorney, personally and apparently from his own knowledge, to characterize the defendant as "a potential murderer"; that "he sat there and committed wilful and deliberate perjury"; that "he will go out here, as the evidence shows, with a gun"; and that "this man can be dubbed and termed a wholesale arch criminal"; in each case was in effect a statement by an officer of the court, not under oath, nor subject to cross-examination by the defendant, which, owing to the position occupied by the district attorney, especially in the eyes of the jury, was well calculated to exert a powerful influence against the defendant when the time came for the jury to write its verdict. To take such an unfair advantage is subject to severe criticism and condemnation. That such conduct was prejudicially erroneous and affected substantial rights of the defendant is manifest. It follows that, unless it may be said that, notwithstanding such error, no miscarriage of justice has resulted to the defendant, a new trial must be ordered. The evidence shows that as to each of the charges against defendant his identification as the perpetrator of the crime was complete and unmistakable. In addition thereto, as testified in detail by two police officers, the defendant confessed to his participation in each of the crimes charged in the information. In view of the provisions of section 4½ of article VI of the constitution, to the effect that, notwithstanding error as to any matter of procedure, the judgment shall not be set aside unless, after an examination of the entire cause, including the evidence, it shall appear that the error of which complaint is made resulted in a miscarriage of justice, it is concluded that, inasmuch as the evidence herein unquestionably shows the guilt of defendant, so far as the error of misconduct by the deputy district attorney is concerned, the judgment and order of the trial court denying the motion for a new trial should not be disturbed.

It is ordered that as to each count of the information on which defendant was found guilty, the judgment and the order denying the motion for a new trial be, and they are, affirmed.

Conrey, P. J., and York, J., concurred.