[No. B169300. Second Dist., Div. Four. Oct. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CORA LEE THOMAS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, and IV of Discussion.

**COUNSEL**

Diana M. Teran, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc J. Nolan and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

EPSTEIN, P. J.— ■ In the published portion of this opinion, we conclude that a purse snatch satisfies the force or fear element of robbery where the thief wrests the purse from the individual who has it on his or her person, using the amount of force necessary to get it away. In the nonpublished portion of the opinion we deal with the other issues raised by the defendant. We conclude that the trial court adequately instructed the jury that any violation of defendant's Fourth Amendment rights incident to a search of her "bulk property" was harmless, and that there is no sentencing error under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]. We shall affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL SUMMARY

On a Saturday afternoon in June 2002, defendant Cora Lee Thomas and a companion engaged in a robbery crime spree in the Lancaster area of Los Angeles County. There were three separate episodes. In each, her companion (who was not tried with her and about whom little identifying information is supplied in this record) accosted a woman in the parking area of a supermarket or large shopping store or mall, and, using force, took or tried to take her purse. Defendant drove a car used to transport the companion to the location of the crimes, then, when he fled the scene, she drove it to a location at which he jumped into the car, usually headfirst into an open window, and she drove off.

Once defendant was apprehended, four counts were charged against her: one for attempted robbery, two for robbery, and one for receiving stolen property. She also was charged with two prior serious felonies and a prior prison term. There is no factual dispute raised as to the attempted robbery count; a suppression issue is raised as to the third count; and the fourth count, for receiving, eventually was dismissed. We shall reserve our factual summary as to the third count to our discussion of the search and seizure issue. It is only necessary at this point to set out the factual information concerning the second count, for a completed robbery.

■ On appeal from a criminal conviction we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) In doing so, "we view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce

from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277 [266 Cal.Rptr. 834, 786 P.2d 892].) The following summary is based on this standard of review.

On June 29, 2002, between 2:05 and 2:30 in the afternoon, Carol Ippolito was with her husband and daughter in the parking lot of an Albertson's store in Lancaster. She was loading groceries into the family truck. Her purse hung down to her waistline and was secured by a strap around her left shoulder. She "felt something hot against [her] arm, and then the strap, something grabbed it. And I was holding on to it, and the strap broke or pulled right out of my hand, so the strap was broken." The hot object was a knife. She tried to hang onto her purse. It started going off her arm, and she held on to it, but the strap, then broken, slipped through her hands—"it just pulled right through. I couldn't hold it" although she tried to do so with both hands. Prior to this incident the strap was in good condition, not broken. It was connected to the purse with loops and sewn leather, which also were in good condition. She got a good look at the person who took her purse, and described him. She saw his hands, which were gripping the purse, and she felt it pulling away. The entire episode took only seconds, and after getting the purse, the man ran to a white Nissan and dove into the back open window with his feet remaining outside the car, and the car sped away. Mrs. Ippolito got the license plate numbers with the assistance of a man who drove up and wrote them down as she called them off. Her credit card, which was in the purse, was used twice within the next 15 minutes; some $150 was charged on the card.

The other person went into the store. Within minutes after that, law enforcement officers arrived. A deputy sheriff spoke to Mrs. Ippolito, who was distraught and visibly shaken by the incident. Mrs. Ippolito related that she had just finished shopping and was outside her vehicle when she felt something hot touch the inside of her arm; she looked down and saw a knife, or stainless steel knife blade. Immediately after that she felt tension on her purse, and the knife cut through the purse strap, which was pulled loose. She saw the man run several steps to a waiting vehicle, into which he dove headfirst, and the vehicle drove away.[1]

On the evening of June 29, the vehicle was observed at Sierra Highway and Avenue J-8. Defendant was the driver. The license plate number matched the one reported by Mrs. Ippolito. The car was pulled over, and some of Mrs. Ippolito's property was found inside.

---

[1] There was a hearsay objection to Mrs. Ippolito's statements as related by the officer. The objection was overruled as "it appears to be an appropriate exception." The court apparently was referring to the spontaneous statement hearsay exception. (Evid. Code, § 1240.) No issue about this is raised on appeal.

Defendant was convicted as an aider and abettor and accomplice to the robbery of Mrs. Ippolito, as well as on three other counts. She admitted the prior convictions charged against her. The receiving stolen property count was dismissed on motion of the prosecutor, and at sentencing the court struck one of the two serious felony prior convictions and eventually dismissed a prior prison term enhancement. (Pen. Code, § 667.5, subd. (b); all further code citations are to this code.) Defendant was sentenced on the three counts and two prior serious felonies to an aggregate term of 24 years three months. She filed a timely notice of appeal.

## DISCUSSION

### I

Defendant argues that the evidence is insufficient to support her conviction of robbery of Mrs. Ippolito. Instead, she argues, her crime was grand theft from the person, a violation of section 487, subdivision (c), which is a lesser included offense to robbery. (*People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].) She argues that the facts demonstrate nothing more than a simple purse snatch, and that a snatch of something from the victim's person, without threatening, scaring, harming, pushing, or otherwise confronting the victim physically, is grand theft from the person, not robbery.

There may be some generalized impression abroad that a purse snatch—grabbing a purse (or similar object) from a person—is grand theft and nothing more. Thus, it has been said that the purpose of section 487 is to "guard against 'the purse snatcher.'" (*People v. Huggins* (1997) 51 Cal.App.4th 1654, 1658 [60 Cal.Rptr.2d 177].)[2] And a 1972 American Law Reports annotation on the subject concludes that most of the state courts that have considered the issue have said that purse snatching is not robbery, although the weight of authority is otherwise where the force used is sufficient. (Annot., Purse Snatching as Robbery or Theft (1972) 42 A.L.R.3d 1381, 1383, 1385, in which few cases are cited, none of them from California.)

---

[2] The *Huggins* case cites *People v. McElroy* (1897) 116 Cal. 583, 586 [48 P. 718] for this proposition. The issue in *McElroy* is whether property was taken "from the person" where the property taken was a pair of trousers the victim was using as a pillow. The court held that it was not. In a 153-word sentence, the court said the statute was directed at "the purse snatcher, the jewel abstracter" and persons of like ilk.

We have found no California case that holds that purse snatch cannot qualify as a robbery. As we shall explain, whether it does or not depends on the force used.[3]

The robbery statute, section 211, describes robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." This is the original Field Code statute, enacted in 1872, and never changed. The law was the same even before then. The original penal law of California, an Act Concerning Crimes and Punishments, describes robbery as "the felonious and violent taking of money, goods, or other valuable thing from the person of another, by force or intimidation." (Stats. 1850, ch. 99, § 59, p. 235.) Prior to that, force or fear was an element of robbery at common law. (See *People v. Shuler* (1865) 28 Cal. 490, 492.)

*People v. Church* (1897) 116 Cal. 300 [48 P. 125] is a leading decision on the issue. In that case, the "offense here charged [was] claimed to have been committed in a saloon, in the presence of various habitues of that resort." (*Id.* at p. 301.) The defendant grabbed a watch, or watch and chain, from one of the patrons and ran out the door with it. He was caught and charged with robbery. The trial court instructed the jury that since the charge was robbery, not larceny, the value of the item taken did not matter: the charged crime " 'is not like a case of larceny; where larceny is charged value becomes material, but here robbery is charged.' " (*Id.* at p. 302.) The instruction was error because the evidence also could have supported a charge of "grand larceny" (as it was then called; see Stats. 1850, ch. 99, § 60, p. 235), and it was for the jury to decide. The court observed that "[m]any cases of robbery may be disclosed by the evidence where the trial court would be justified in refusing an instruction to the effect that the defendant could be convicted of grand larceny. Such cases would be those where the evidence, without contradiction, indicates the offense to have been accomplished by means of force or fear" but this case was not one of them. (*People v. Church, supra,* at p. 303.) Where the evidence would support either crime and robbery is charged, the better practice is to instruct the jury on the lesser crime as well.[4] The robbery conviction in *Church* was reversed because the decision of whether the taking

---

[3] That is true when the issue centers on the force prong of robbery. Some difficulty is encountered where the pleading alleges force *and* fear in the conjunctive. There is authority that, at least in that context, the coercive effect of the fear amounts to force. (See *People v. Wright* (1996) 52 Cal.App.4th 203, 211 [59 Cal.Rptr.2d 316], and *People v. Brookins* (1989) 215 Cal.App.3d 1297, 1309 [264 Cal.Rptr. 240].) That is not our case.

[4] The law has evolved since 1897. It is now well established that in this situation, the court must instruct on the lesser included crime. (See *People v. Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311], overruled on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 200 [47 Cal.Rptr.2d 569, 906 P.2d 531].) Indeed, the prosecutor has discretion to charge a case either as robbery or grand theft where both theories are supportable. There is

involved force or not was for the jury to determine and the court's instruction deprived it of the opportunity to make that decision. (*People v. Church, supra,* 116 Cal. at p. 304.)

■ Later cases have discussed the amount of force required for robbery as opposed to grand theft. In *People v. Morales* (1975) 49 Cal.App.3d 134 [122 Cal.Rptr. 157], the court observed that no case had purported to precisely define that amount of force. "However, it is established that something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property." (*Id.* at p. 139.) In *Morales* as in *Church,* upon which it relies, the trial court error was in failing to instruct the jury on the lesser included crime of theft from the person. (*Id.* at p. 141.) So it is that, "[w]hen actual force is present in a robbery, at the very least it must be a quantum more than that which is needed merely to take the property from the person of the victim, and is a question of fact to be resolved by the jury taking into account the physical characteristics of the robber and the victim." (*People v. Wright, supra,* 52 Cal.App.4th at p. 210, italics omitted.) An accepted articulation of the rule is that "[a]ll the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . ." (*People v. Clayton* (1928) 89 Cal.App. 405, 411 [264 P. 1105]; see *People v. Lescallett* (1981) 123 Cal.App.3d. 487, 491 [176 Cal.Rptr. 687], overruled on another point in *People v. Allison* (1989) 48 Cal.3d 879, 895 [258 Cal.Rptr. 208, 771 P.2d 1294] [quoting *Clayton* with approval]; see also *People v. Jefferson* (1939) 31 Cal.App.2d 562, 567 [88 P.2d 238], *People v. Roberts* (1976) 57 Cal.App.3d 782 [129 Cal.Rptr. 529], overruled on another ground in *People v. Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771], and *People v. Welch* (1963) 218 Cal.App.2d 422, 423 [31 Cal.Rptr. 926].) *People v. Roberts* is especially similar to the present case. The court said: "Certainly, the evidence that the purse was grabbed with such force that the handle broke supports the jury's implied finding that such force existed." (*People v. Roberts, supra,* 57 Cal.App.3d at p. 787.)

■ So it is in this case. Defendant's companion grabbed Mrs. Ippolito's purse and tried to pull it away from her; she pulled back, trying to prevent her purse from being taken. The thief succeeded by cutting or breaking the strap that was over the victim's shoulder and pulled on the strap with enough strength to defeat efforts to hold on to the purse. That description perfectly fits the force provision of the crime of robbery.

Of course, the jury might have found that no more force was used than necessary to lift the purse from Mrs. Ippolito's person without resistance on

---

no infirmity in the fact that prosecutors have such discretion. (See discussion in *People v. Wilkinson* (2004) 33 Cal.4th 821, 838, 840 [16 Cal.Rptr.3d 420, 94 P.3d 551].)

her part. It was the jury's function to make that decision. The vice in earlier cases, in which robbery convictions were reversed, was that the jury was not given that choice through the court's instructions. It was given the choice in this case; the court specifically instructed on grand theft as a lesser included offense to the two robbery and one attempted robbery charges.

II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 2006, S139094.

---

*See footnote, *ante*, page 488.