Filed 2/23/15  P. v. Collier CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060943 |
| v. | (Super.Ct.No. FVI1300754) |
| SKYLAR PETYON COLLIER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Skylar Peyton Collier of second degree robbery. (Pen. Code,[1] § 211, count 1.) He was sentenced to three years in state prison. On appeal, defendant argues that his conviction should be reversed and reduced to grand theft person (§ 487, subd. (c)) on the ground that there was insufficient evidence to support the finding of force or fear necessary for a robbery conviction. Defendant also contends that reversal is warranted because he was prejudiced by the admission of testimony that he invoked his *Miranda*[2] rights during a police interview. For the reasons explained below, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

1. *Testimony regarding the taking of the bank bag*

At trial in December 2013, the parties presented the following evidence to the jury. On February 16, 2013, defendant and his friend were at a truck stop in Hesperia looking for money to buy heroin. The victim, a 12-year-old Girl Scout, was also at the truck stop that day, selling cookies at a table with her mother, three other scouts, and another adult. Under Girl Scouts' procedure, when a cookie sale occurs the money is to be placed into a zippered bank bag. The scout who is responsible for collecting money is instructed to keep the bag close to her at all times.

---

[1] Unless stated otherwise, all further statutory references are to the Penal Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

Defendant walked up to the victim's table three separate times that afternoon and looked at or inquired about the cookies. The fourth time defendant returned to the table, the victim and her mother were there alone because the others had gone to use the restroom.

The victim testified that defendant approached the table from her left side and that she was holding the bank bag and "grabbing it kind of tight." As she was looking at other customers, she "noticed there was a tug" on the bag and, because she thought it was her friend pulling on the bag, she "pulled back lightly." After she pulled back on the bag, defendant "grabbed the money [bag]" and, with his other hand, took a donations container and a box of cookies from the table. The victim recalled a total of three tugs on the bag—defendant's first tug, her tug back, and his final tug.

The victim's mother testified that she was sitting close to her daughter, a "few feet away," when the defendant took the bank bag. She testified that she saw a "little struggle" between her daughter and defendant and that "[w]ith one hand he grabbed the money bag from [the victim]." When asked about the struggle on cross examination, she said she saw "[t]he bag pulled back and forth really quick [¶] . . . [¶] left and right."

After taking the items, the defendant ran to his friend's car, which was parked in the truck stop parking lot. They drove to another friend's house to buy heroin with the Girl Scouts' money.

Defendant testified that he agreed with every aspect of the victim and her mother's testimony about the incident except for their description of how he took the bank bag.

3

Defendant denied taking the bag from the victim's hands and testified that he had taken it from the table. Defendant's friend who was driving the car that day (and who was in custody at the time of trial) testified that after defendant got into the car he told him that he "just ran up and grabbed [the bank bag] off the table." When asked on cross-examination why he had not mentioned that defendant had told him he had taken the bag from the table during previous police interviews, he replied that the police had "never asked" that specific question.

2. *The invocation testimony*

A few weeks after the incident, an officer questioned defendant about the incident after having read defendant his *Miranda* rights. During the interview, defendant lied about having been to the truck stop in Hesperia during the time of the incident. Before trial, the prosecution moved to introduce defendant's dishonest statement to the police for purposes of impeachment if defendant testified.

At the close of the People's case, the officer testified that during the interview defendant denied he had been at the truck stop in Hesperia in the past few months. He further testified that when he told defendant he had an incriminating video of him and his friend at the truck stop on the date of the incident, defendant indicated that he no longer wanted to talk to the officer. Defense counsel did not object during the officer's testimony.

After the parties rested, the court asked the prosecutor why he had called the officer as a witness. The prosecutor explained that his purpose in calling the officer as a

4

witness was to attack defendant's credibility by demonstrating that he had lied about being at the truck stop. The prosecutor explained that he stopped questioning the officer when he elicited the testimony regarding defendant's invocation of his *Miranda* rights because he "was not trying to go there." The court described the prosecutor's elicitation of the invocation testimony as a "tactical mistake," but concluded that it was "okay with it." Defense counsel then indicated that he had no objection to the testimony.

3. *The conviction*

At the close of the prosecution's case, defendant made a section 1118.1 motion to acquit on the charge of robbery, arguing insufficient evidence to support a finding that defendant used force to take the bank bag. The People opposed the motion, arguing that there was a struggle between defendant and the victim for the bag and that defendant used force to overcome her resistance and take the bag from her. The trial court denied the motion on the ground that "a reasonable jury could find the defendant guilty as charged." On December 11, 2013, the jury convicted defendant of robbery. On April 4, 2014, defendant was sentenced to three years in state prison.

II

ANALYSIS

1. *Sufficiency of the evidence*

Defendant argues that his robbery conviction should be reversed because there was insufficient evidence to support a finding that he used "force or fear"—a necessary

5

element of robbery—to take the bank bag.  Because we hold that there is substantial evidence to support a finding of actual force, we disagree.

When considering a challenge to the sufficiency of evidence supporting a conviction, we must " 'review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 364.)  To succeed under a substantial evidence review, defendant must establish that no rational jury could have concluded as it did—it does not matter that "the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime." (*People v. Hill* (1998) 17 Cal.4th 800, 849.)  Indeed, under a substantial evidence review, "the testimony of a single witness is sufficient to support a conviction," so long as that testimony is not inherently improbable or physically impossible.  (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

The Penal Code defines the crime of robbery as the taking of personal property from another's possession "by means of force or fear."  (§ 211; see *People v. Gomez* (2008) 43 Cal.4th 249, 254.)  Absent force or fear, the crime committed is grand theft from the person, not robbery.  (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1707 (*Mungia*).)

The amount of force required to constitute a robbery " ' "is such force as is actually sufficient to overcome the victim's resistance." ' " (*People v. Burns* (2009) 172

Cal.App.4th 1251, 1259 (*Burns*).) "[T]he force need not be of an extreme character. Thus, even a snatching may be robbery if it is forcible, as by . . . knocking an object out of a person's hands." (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 99, p. 137; see *Burns*, at pp. 1255, 1259 [grabbing purse from the elbow of the victim who tried to clutch the purse constituted sufficient force]; *People v. Clayton* (1928) 89 Cal.App. 405, 411 [knocking property out of the victim's hands in two attempts constituted sufficient force].) Thus, if there is substantial evidence to support a finding that defendant took the bank bag by overcoming the victim's resistance, we will affirm a robbery conviction.

Here, the jury heard testimony from both the victim and her mother that there was a brief struggle between the defendant and the victim for the bank bag. The victim testified that, as she was holding the bag in her hands, she felt a tug to the left, she tugged back to the right, and then defendant pulled the bag one more time to the left, removing it from her grip. The victim's mother testified that she saw a "struggle" between defendant and her daughter that consisted of the bag being "pulled back and forth." Her description of the events corroborates the victim's testimony, which testimony alone is substantial evidence from which the jury could reasonably infer that defendant used force to take the bag.

Defendant argues that the evidence does not demonstrate that the *degree* of force he used to take the bank bag from the victim was sufficient to satisfy the force element. Defendant points to differing testimony on the taking of the bank bag and asserts that

7

"the facts were contradictory as to whether sufficient force was used to overcome [the victim's] resistance."

As stated, sufficient force for a robbery is simply force that is " ' "actually sufficient' ' " to overcome the victim's resistance. (*Burns*, *supra*, 172 Cal.App.4th at p. 1259.) In other words, the degree of force is immaterial so long as the victim resisted the taking. (See *Mungia*, *supra*, 234 Cal.App.3d at p. 1709 [force is a "relative concept" because some people are more vulnerable than others, and the determination of whether the physical act applied to the victim constitutes force is a factual question the jury must determine "using its own common sense"].) Here, the jury could reasonably infer based on the victim's and her mother's testimony that when taking the bag defendant used force sufficient to overcome the resistance of a 12-year-old girl.

Finally, defendant's contention that "[t]he testimony of various witnesses was all over the map" is unpersuasive in a substantial evidence analysis. Neither the fact that the jury heard a conflicting description of the taking from both defendant and his friend nor any of the alleged weaknesses in the victim's or her mother's testimony render the evidence supporting the conviction insufficient. The substantial evidence standard requires more than a showing that the jury heard conflicting or unconvincing evidence. "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) As we determined *ante*, the victim's and her mother's testimony

8

regarding the manner in which defendant took the bank bag from the victim constitutes substantial evidence.

2. *The invocation testimony*

Defendant contends that the trial court erred when it admitted the officer's testimony that he invoked his right against self-incrimination during his police interview. In the alternative, he argues that trial counsel rendered ineffective assistance of counsel by failing to object to the invocation testimony. He asserts that the invocation testimony prejudiced him by tainting his credibility before he testified and "might well have tipped the scales of credibility in favor of a verdict of robbery versus grand theft person." In effect, defendant argues that a *Doyle*[3] error occurred at his trial. Because no such error occurred, we reject both of defendant's claims.

Under *Doyle*, "the use against defendant of a postarrest invocation of rights following a Miranda admonition violates due process." (*People v. Thomas* (2012) 54 Cal.4th 908, 936 (*Thomas*), citing *Doyle*, *supra*, 426 U.S. at p. 619.) However, the *Doyle* rule is not violated where " ' "the evidence of defendant's invocation . . . was *received without objection* and the remarks of the prosecutor *did not invite the jury to draw any adverse inference* from either the fact or the timing of defendant's exercise of his constitutional right." ' " (*Thomas*, at p. 936, italics added, original italics omitted, citing *People v. Huggins* (2006) 38 Cal.4th 175, 199.) In other words, a " '*Doyle* violation does not occur unless the prosecutor is *permitted* to use a defendant's postarrest silence against

_____

[3] *Doyle v. Ohio* (1976) 426 U.S. 610.

9

him at trial.'" (*Thomas*, at p. 936, citing *People v. Clark* (2011) 52 Cal.4th 856, 959, original italics.) Finally, the failure to object to the testimony at trial waives a claim of *Doyle* error. (*People v. Hughes* (2002) 27 Cal.4th 287, 332 (*Hughes*).)

Here, the prosecutor ceased questioning the officer as soon as he elicited the invocation testimony. Defense counsel did not object to the testimony, and the prosecutor did not attempt to use the testimony against defendant (e.g., by inviting the jury to draw an adverse inference from his invocation). Therefore, not only was there no violation of defendant's constitutional rights, but also defendant waived any *Doyle* error argument by failing to object during trial.

Putting aside the issue of waiver and *assuming* the invocation testimony violates *Doyle*, any error in permitting the violation is not reversible if it is harmless beyond a reasonable doubt. (*Thomas*, *supra*, 54 Cal.4th at pp. 936-937.) In *People v. Hinton* (2006) 37 Cal.4th 839 (*Hinton*), the prosecutor elicited testimony that the defendant had invoked his *Miranda* rights during an interview, as well as testimony that the defendant had admitted to giving police false statements both before and after his invocation. (*Id.* at p. 867.) The trial court denied the defendant's motion for a mistrial on the basis of *Doyle* error, expressing doubt that the jurors were " 'going to do much with [the invocation testimony]' " and directing the prosecutor not to mention or refer to the testimony. (*Ibid.*)

On appeal, the court upheld the trial court's ruling, concluding that the *Doyle* error was harmless beyond a reasonable doubt. (*Hinton*, *supra*, 37 Cal.4th at pp. 867-868.)

10

The court based its conclusion on the dual grounds that "the prosecutor never again mentioned the invocation during trial or closing argument" and that the invocation testimony was "both cumulative of—and inferior to—the other evidence indicating that he had fabricated the account he . . . provided . . . at trial." (*Ibid.*) The court reasoned that while "the jury could *in theory* have relied on defendant's unwillingness to speak to the police . . . to infer that he was fabricating a defense . . . . The problem with defendant's trial testimony was not that the jury heard that he once invoked his *Miranda* rights, but that he repeatedly provided in the other interviews untrue accounts of his involvement . . . ." (*Id.* at pp. 867-868, italics added.)

Similarly here, the prosecutor did not mention the invocation testimony after having elicited it, and defendant admitted to having given the officer untrue accounts of his involvement in the incident. As in *Hinton*, the problem with defendant's trial testimony was not that the jury heard that he once invoked his *Miranda* rights, but that he testified he lied to the officer about being at the truck stop because he "was scared to get into any trouble." While it is conceivable that the invocation testimony could allow a jury to conclude that defendant's credibility is poor and, thus, that he could be lying about the central issue in the case—whether he used force to take the bank bag from the victim—that testimony was cumulative of, and inferior to, the direct evidence that defendant affirmatively lied to the officer during the interview before invoking his *Miranda* rights. Because the prosecutor did nothing with the testimony and because the testimony was cumulative of, and less harmful than, other testimony the jury heard

11

during trial,[4] we conclude that the invocation testimony could not have affected the jury's finding on the force element.  We therefore hold that any *Doyle* error here was harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
          P. J.

We concur:

HOLLENHORST
       J.

McKINSTER
       J.

---

[4]  This testimony includes defendant's admission that he lied to the police about his presence at the truck stop as well as the testimony given by the victim and her mother describing the taking as a struggle.  (See *Hughes*, *supra*, 27 Cal.4th at p. 332 [any *Doyle* error was harmless beyond a reasonable doubt "in light of the overwhelming evidence of defendant's guilt"].)