Filed 8/14/25  P. v. Paen CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KYLE JOSEPH PAEN,<br><br>    Defendant and Appellant. | D084396<br><br><br>(Super. Ct. No. SCE422670) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Ksenia Gracheva, and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Kyle Joseph Paen challenges his robbery conviction by claiming the trial court prejudicially erred when it (1) declined to instruct the jury on petty theft as a lesser included offense of robbery and (2) instead instructed on the

lesser related offense of shoplifting over Paen's objection. Because Paen failed to establish prejudicial error, we affirm.

## I.

### A.

In November 2023, an on-duty security guard saw Paen walk into a discount retail store. The security guard recognized Paen from previous store visits and reported him as "suspicious" over the radio to the assistant manager. From her position at the store's entrance, the security guard watched Paen approach an electronics table and grab three speakers priced "around [$]89.99" each. When the security guard lost sight of Paen, she told the assistant manager that Paen was headed towards the home department, to which the assistant manager reported, "'I'm on my way to go greet him.'"

The assistant manager located Paen in an aisle in the home goods department and testified to seeing him "pulling apart two alarms from two speakers boxes." The assistant manager watched Paen place the alarms in a basket and then place the speakers inside a blue bag from a different store.

Standing towards the right-hand side of the aisle, the assistant manager yelled at Paen to stop removing the alarms and "to pay for [the speakers] or to leave the store." The aisle was open and unobstructed behind Paen, but he made no attempt to exit that way. Instead, he "walked very fast towards" the assistant manager and "pushed" him with his forearm. When demonstrating how Paen pushed him, the assistant manager "lifted his right arm and rubbed across his forearm area, from the elbow down to the top of his hand."

While the surveillance footage played for the jury at trial, the assistant manager identified himself taking "a step backward" after being "pushed" by

Paen. According to him, the push frightened him and caused him to briefly grab Paen's sweatshirt.

After the assistant manager released Paen's sweatshirt, Paen walked towards the front exit of the store. The assistant manager followed to ensure Paen would not "hurt anybody else because of what he had done to me." Over the radio, the assistant manager notified the security guard that Paen was walking towards the exit and to "watch out because he had pushed me." Paen walked past the security guard, who stepped aside, and exited the store with the speakers. Paen then entered the passenger side of a vehicle in the parking lot, which drove away from the store.

On cross-examination, the assistant manager did not recall showing the investigating officer the alarms he saw Paen remove from the speakers. The assistant manager told the investigating officer and prosecutor about the removed alarms about six months after the incident, though he also testified that he "mentioned exactly the same thing" to the security guard and investigating officer "the day that the incident occurred." No surveillance footage captured the alarm removal.

At trial, the investigating officer was shown still photographs from the surveillance footage he had previously watched. When shown a photograph of the confrontation between Paen and the assistant manager and asked if he could see where contact was made, the officer said, "It is pretty close, but it appears [Paen's] forearm is probably on [the assistant manager's] chest." The officer acknowledged he could not see Paen's right hand, that "you can just see basically his elbow." When asked if he could see where Paen's hand was on the assistant manager's chest, the officer responded "[n]o, not from this angle."

3

B.

Paen was charged with robbery. (Pen. Code § 211.)

During trial, defense counsel requested the court instruct the jury on petty theft as a lesser included offense of robbery. The court agreed to instruct the jury with CALCRIM No. 1800 as "the definition of theft" as the term is used in the other instructions but not as a lesser included offense.

Instead of instructing on a lesser included offense, the court decided— over defense counsel's objection—to instruct the jury on shoplifting as a lesser related offense.

The jury convicted Paen of robbery as charged. The court sentenced him to a term of three years in prison.

II.

A.

Paen claims the trial court erred by not instructing the jury on petty theft as a lesser included offense of robbery because substantial evidence supports finding he did not use force during the taking. We conclude the trial court did not err in this respect.

We review de novo a trial court's decision not to instruct on a lesser included offense. (*People v. Avila* (2009) 46 Cal.4th 680, 705.) In doing so, we consider the evidence in the light most favorable to the defendant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5.)

1.

"[T]he trial court must instruct on the general principles of law relevant to the issues raised by the evidence." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) A trial court must instruct the jury on an uncharged lesser included offense "if there is substantial evidence from which the jury could reasonably conclude that the defendant committed the lesser included

4

offense but not the charged offense." (*People v. Lopez* (2020) 9 Cal.5th 254, 269.)  Yet "a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction."  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)  "Substantial evidence in this context is that which a reasonable jury could find persuasive."  (*People v. Choyce* (2025) 18 Cal.5th 86, 104.)  "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*People v. Simon* (2016) 1 Cal.5th 98, 132.)

"[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.)

Here, the charged offense was robbery.  "Robbery is the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear."[1]  (§ 211.)

Petty theft, on the other hand, is the taking of personal property of another where the value of the stolen property does not exceed $950. (§§ 484(a), 490.2(a).)

"Theft is a lesser included offense of robbery, which includes the additional element of force or fear."  (*People v. Melton* (1988) 44 Cal.3d 713, 746.)

---

[1]    The parties agree the court inadvertently omitted the term "or fear" from the robbery instruction the jury received.  Paen does not claim the omission of "or fear" from the robbery instruction constituted prejudicial error.  As a result, we focus our analysis on "force."

2.

To start, the People assert "the trial court's duty to instruct on petty theft turns on intent, not force." But not in all cases.

The People rely on *People v. Bradford* (1997) 14 Cal.4th 1005, 1055-1056, in which the Supreme Court held "[i]f intent to steal arose only after the victim was assaulted, the robbery element of stealing by force or fear is absent." There, the use of force was undisputed because the defendant had killed the victim before taking her property, so the only question was when the intent to steal formed relative to the killing. (*Id.* at p. 1056.) But *Bradford* does not, as the People suggest, hold that the timing of the defendant's intent to steal is the *only* aspect of force we examine when assessing if a lesser included theft offense instruction was warranted.

Accordingly, we turn to whether evidence existed as to the absence of force by Paen that a reasonable jury could find persuasive.

3.

Paen contends substantial evidence supports his theory that he did not use force to take the speakers. As far as we can discern, Paen appears to argue (1) the jury may have doubted the assistant manager's credibility because "he did not tell anyone about the . . . alarms being removed in a timely manner, and there was no other evidence of that"; (2) the investigating officer testified he "was unsure 'where any contact was made'" in a still photograph from the surveillance footage; and (3) the surveillance footage could be viewed to show Paen slipping by the assistant manager without using force. We disagree.

Force sufficient to establish a robbery "must be a quantum more than that which is needed merely to take the property from the person of the victim." (*People v. Wright* (1996) 52 Cal.App.4th 203, 210.) "'All the force

6

that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance.'" (*People v. Clayton* (1928) 89 Cal.App. 405, 411.) Here, the jury was instructed the force required for robbery "must be more than the incidental touching necessary to take the property." For example, "a slight push, 'like a tap,' on [the] shoulder" can satisfy the element of force for robbery. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246.) In *Garcia*, had the defendant "simply brush[ed] against the cashier as he grabbed for the money," force might have been lacking, but instead he "intentionally pushed against [the cashier] to move her out of the way so he could reach into the register." (*Ibid.*)

As to Paen's claim questioning the assistant manager's "credibility" because he "did not tell anyone" about the removed speaker alarms "in a timely manner," we disagree with Paen's characterization of the testimony. The assistant manager testified he did not recall *showing* the alarms to the investigating officer, but he also testified he told the officer about seeing Paen remove the alarms "the day that the incident occurred" as well as six months later. In any event, Paen does not fully explain or provide any supporting authority for how this purportedly "impeached" testimony about the alarms has any bearing on the question of force.

Paen next asserts the investigating officer was "unsure" about where Paen contacted the assistant manager in a still photograph of the confrontation. Yet the officer's statements were in response to questions about "*where* any contact was made" and "*where* on [the assistant manager's] chest that [Paen's] hand is," rather than any question about *whether* any contact had been made. (Italics added.) At other points in his testimony, the officer was unequivocal that, based on his review of the surveillance footage, Paen "pushed" or "shoved" the assistant manager. In context, the officer's

7

statements refer only to the location of Paen's hand on the assistant manager's chest and provide no evidence suggesting contact was *not* made during the taking. Thus, this testimony is not substantial evidence of a lack of force.

Paen also contends a jury could have decided the surveillance footage shows Paen "slipped through the space between [the assistant manager] and the merchandise shelf without using force." But even when viewed in the light most favorable to Paen, the surveillance footage does not support this interpretation. Instead, it shows Paen using his forearm to push the assistant manager back a step as he exited the aisle. It also captures the assistant manager taking a step backwards consistent with being pushed. Consistent with the footage, the assistant manager testified to alerting the security guard to "watch out" because Paen had "pushed" him.

Paen's reliance on *People v. Brew* (1991) 2 Cal.App.4th 99 and *People v. Morales* (1975) 49 Cal.App.3d 134 is unavailing. *Brew* found the taking was accomplished without force or fear as the defendant confiscated money without touching the cashier. (*Brew*, 2 Cal.App.4th at p. 105.) Here, in contrast, testimony and video evidence established Paen pushed the assistant manager. And in *Morales*, evidence supported an inference that the victim fell not because she was shoved but because she was startled. (*Morales*, at p. 140.) The court stated, "[t]he witness' distance from the event, . . . her inability to remember details, and the fact that the victim fell backwards all arguably cast doubt upon . . . her testimony that the defendant deliberately pushed the victim." (*Ibid*.) No such evidence casts the same doubt here.

We conclude no substantial evidence supports Paen's theory he did not use force to accomplish the taking. Accordingly, the trial court's refusal to

instruct on petty theft was not error. Absent error, we need not address Paen's corresponding prejudice arguments.

B.

Paen also contends the court erred by instructing the jury on shoplifting as a lesser related offense over his objection. While we agree giving this instruction was error, Paen does not show any prejudice from that error.

A lesser related offense is one that, even if it "shares some common elements with the greater offense" or "arises out of the same criminal course of conduct as the greater offense," "has one or more elements that are not elements of the greater offense as alleged." (*People v. Hicks* (2017) 4 Cal.5th 203, 209.) It is undisputed shoplifting is a lesser related, not a lesser included, offense of robbery.

"California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties." (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) "An accusatory pleading provides notice of the specific offense charged and also of offenses included within the charged offense . . . but it does not provide notice of nonincluded offenses." (*People v. Toro* (1989) 47 Cal.3d 966, 973.) Because a lesser related offense—unlike a lesser included offense—includes elements apart from those of the charged greater offense, "[t]he due process notice requirement precludes conviction for a lesser related offense when the defendant has not consented to its consideration by the trier of fact." (*Toro*, at p. 975.) Thus, "the decision to permit or preclude consideration of the lesser related offense is a right accorded to the defendant." (*Ibid.*)

Here, the court instructed the jury on shoplifting "as a lesser related" offense "over" Paen's "objection." Doing so was error.

9

Even so, Paen does not explain how the shoplifting instruction prejudiced him.  In his opening brief, Paen's prejudice argument focuses entirely on the absent lesser included offense without discussing the shoplifting instruction.  And though Paen mentions shoplifting in the prejudice section of his reply brief, he does so only to explain why it did not cure the prejudice flowing from the lack of lesser included offense instruction and not because he asserts any prejudice flowed from the shoplifting instruction itself.  Error without a showing of prejudice, or a showing of entitlement to relief regardless of prejudice, is insufficient to obtain appellate relief.  (See *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)

III.

We affirm.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.

10