[Crim. No. 23129. Aug. 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOHN RAMKEESOON, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Supreme Court, George L. Schraer and Jean R. Sternberg, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Donald E. Niver and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KAUS, J.**—Defendant Michael John Ramkeesoon appeals the judgment of conviction of first degree murder and robbery with findings of use of a deadly weapon. (Pen. Code, §§ 187, 211, 12022, subd. (b).) He contends that the trial court prejudicially erred in refusing to instruct on theft as a lesser included offense in robbery. We are bound to agree and conclude that the judgment must therefore be reversed.

I

We relate the evidence that justified defendant's requested instructions in some detail. Defendant—a citizen of Trinidad and Tobago in the West Indies who was enroute from Canada to the West Indies—testified as follows: He met the decedent, Robert Mullins, on November 26, 1980, while playing pool at the Eagle Creek bar in San Francisco. Mullins followed defendant to another bar and then invited defendant to get something to eat. While they were eating, Mullins told defendant that he was gay; defendant replied that he was not.

Mullins invited defendant to stay overnight at his apartment and have Thanksgiving dinner there the next day. Defendant accepted, but he made it clear that Mullins was not to expect any sexual favors in return. Mullins tried to persuade defendant to sleep in the bedroom with him, but defendant refused and slept on the couch in the living room.

Defendant spent Thanksgiving Day with Mullins. During the day, Mullins drove him to the Greyhound bus station so he could get his belongings from a locker. Throughout the day Mullins directed mild sexual advances toward defendant. Mullins and defendant spent Thanksgiving evening with Mullins' relatives. Then, around 12:45 a.m., they went to a bar where they stayed about 45 minutes.

When they returned to Mullins' apartment, Mullins asked defendant to go to bed with him. Defendant refused and began to think that Mullins was "truly gay," worrying that he might try to "make a heavy play" for him.

Defendant's bags were in the bedroom. When he went in there he saw Mullins lying naked on the bed. Defendant decided to get his bags and leave. He thanked Mullins and started to leave. Mullins jumped up, threw defendant against the bedroom wall, said, "Don't you think you owe me something," and cut him on the forearm with a knife. Defendant was shocked; he told Mullins not to hurt him, he would do anything Mullins wanted, and asked if he could wash off his arm first.

Defendant went into the bathroom, locked the door, and tried to think of a way to get his bags and leave. He needed his bags because his passport was in them. Defendant heard Mullins walk by and assumed he had gone to lock the front door. Defendant looked around for something he could use to protect himself. The only thing he could find was the porcelain toilet tank top.

Armed with the tank top, defendant went into the bedroom where Mullins was again lying naked on the bed, still holding the knife. Defendant hit Mullins over the head with the tank top as Mullins started to get up. The top shattered into pieces, but the blow did not stop Mullins from coming at defendant. The two struggled; defendant wrenched the knife from Mullins' grasp and stabbed him two or three times. Defendant then dropped the knife and ran into the living room.

Defendant heard footsteps and ran into the kitchen to get another knife. He heard Mullins say, "I'm going to kill you, punk." Armed with the new knife, defendant jumped on Mullins and wrestled him to the floor, stabbing him several times. He then dropped the knife, and, noticing that Mullins'

feet were moving, grabbed a nearby telephone cord and wrapped it around Mullins' feet.

Defendant threw the knife into the kitchen sink, went to the front door, and then realized that he was covered with blood. He went into the bathroom, took a shower, and changed his clothes. As he was getting dressed, he noticed a watch, a wallet, and a set of keys on Mullins' nightstand. He put the wallet and keys in his pocket and the watch on his wrist. Defendant testified repeatedly that this was the first time that it occurred to him to take anything. He also took a clock radio and a Viacom unit from the television set and put them in a paper bag. He intended to take Mullins' car and to pawn the stolen property.

Defendant was stopped by the police while walking about a block and a half from Mullins' apartment. It was 4 a.m., and defendant was carrying what appeared to be radios with wires dangling. Further investigation led to the discovery of Mullins' body.

The coroner testified that Mullins had suffered a total of 28 stab or incisional wounds, 12 of which were to the neck. A stab wound on the lower left part of the chest had penetrated the left lobe of the liver and the stomach. A wound to the right chest penetrated the cavity and caused massive internal damage and bleeding. The cause of death was multiple stab wounds which produced internal hemorrhaging of the right chest cavity.

For purposes of this appeal, it is sufficient to note that the People presented ample circumstantial evidence that would justify a finding to the effect that defendant had harbored an intent to steal from the outset: Defendant was very short of funds and, though not himself gay, went to a gay bar and befriended a man who took him home. Certain physical evidence contradicted much of defendant's version of how the assault occurred.

## II

 At trial, based on his testimony that he had not formed the intent to steal until after the victim had been fatally wounded, defendant requested instructions on larceny and grand and petty theft (CALJIC Nos. 14.02, 14.20, 14.26, and 14.27) as lesser included offenses in robbery. The prosecutor objected, arguing that the instructions the court proposed to give were adequate because if the jury believed defendant's testimony about having no intent to steal until after the stabbing, it would simply acquit him of murder—at least on a felony-murder theory.[1] The court took the matter under submission and ultimately refused the requested instructions.

---

[1] The court eventually instructed, inter alia, on robbery, first degree premeditated murder and robbery felony murder, second degree murder and voluntary manslaughter. It also instructed on self-defense and provocation.

It cannot be seriously disputed that the court erred. ■ Theft is a lesser and necessarily included offense in robbery; robbery has the additional element of a taking by force or fear. (*People* v. *Covington* (1934) 1 Cal.2d 316, 320-321 [34 P.2d 1019]; *People* v. *Church* (1897) 116 Cal. 300, 302-304 [48 P. 125].) ■ It is well settled that the trial court is obligated to instruct on necessarily included offenses—even without a request—when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].)

■ The necessity for instructions on lesser included offenses is based in the defendant's constitutional right to have the jury determine every material issue presented by the evidence. (*People* v. *Geiger* (1984) 35 Cal.3d 510, 519 [199 Cal.Rptr. 45, 674 P.2d 1303]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].) As the United States Supreme Court explained in *Keeble* v. *United States* (1973) 412 U.S. 205, 212 [36 L.Ed.2d 844, 850, 93 S.Ct. 1993]: "[I]t is no answer to petitioner's demand for a jury instruction on a lesser included offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." (See also *People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].)

■ Clearly the evidence in this case warranted an instruction on theft as a lesser included offense. Defendant testified that he had not thought about stealing any of Mullins' property until after the assault was completed. If defendant had not harbored a larcenous intent before or during the assault, the taking was theft rather than robbery. (*People* v. *Green* (1980) 27 Cal.3d 1, 54 [164 Cal.Rptr. 1, 609 P.2d 468].) Although the jury was not required to believe defendant's testimony, it was credible enough to have supported a verdict of theft instead of robbery. (See *People* v. *Wickersham, supra,* 32 Cal.3d at p. 325.)

### III

■ The real question, then, is whether the error is prejudicial. ■ An error in failing to instruct on lesser included offenses requires reversal

unless it can be determined that the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) Such error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would have convicted the defendant of the lesser included offense. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 335.)

 In the present case, the jury was never presented with the factual question posed by the omitted theft instructions. All it had to work with was a victim who had obviously died as a result of violence perpetrated by another and a defendant who was in possession of the victim's property under extremely suspicious circumstances. Since the jury was deprived of the "theft option" which was clearly supported by some evidence, it cannot be said that a verdict finding defendant guilty of robbery necessarily resolved the issue posed by the lesser offense instruction adversely to defendant. (See, e.g., *People* v. *Wickersham, supra,* 32 Cal.3d at p. 335 [jury verdict of first degree premeditated murder did not necessarily resolve question that would have been posed by erroneously omitted second degree murder instruction—whether the defendant acted with malice and intent but without premeditation and deliberation]; *People* v. *Morales* (1975) 49 Cal.App.3d 134 [122 Cal.Rptr. 157] [verdict of robbery and first degree felony murder did not necessarily resolve question that would have been posed by erroneously omitted instruction on grand theft from the person— whether the force used in snatching victim's purse was sufficient for robbery].)

The jury here was left with an "unwarranted all-or-nothing choice" (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 324) on both the robbery and murder counts.[2] The omission of the theft instructions practically guaranteed robbery and felony-murder convictions since defendant had admitted taking Mullins' property and robbery was the only available theft offense. The findings of robbery and murder did not necessarily resolve the factual question of whether the intent to steal was formulated after defendant had inflicted the fatal blows because the jury was never required to decide specifically whether defendant had formed the intent to steal after the assault.[3]

---

[2]For purposes of this appeal, we must assume that the first degree murder verdict was based on felony murder since we have no way of knowing whether the jury relied on that theory or on premeditation and deliberation. (See *People* v. *Green, supra,* 27 Cal.3d at pp. 69-71.)

[3]This is in contrast to the situation in *People* v. *Miller* (1974) 43 Cal.App.3d 77 [117 Cal.Rptr. 491], where the trial court instructed on first and second degree robbery, but erroneously failed to instruct on theft based on the defendant's testimony that he obtained the victim's wallet through a nonviolent Jamaican switch rather than through use of a gun as claimed by the victim. There, the appellate court properly found that the jury had impliedly rejected the defendant's version when it found first degree armed robbery instead of the lesser second degree robbery.

The jury was simply given the standard instructions which list the elements of robbery (CALJIC No. 9.10) and felony murder (CALJIC No. 8.21). Accordingly, the error in failing to instruct on theft and larceny cannot be deemed harmless.[4]

The judgment is reversed.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.

---

[4]Defendant also contends that he should have been given 26 peremptory challenges under Penal Code section 1070 as a defendant facing a possible indeterminate sentence of 25 years to life. We agreed with defendant's interpretation of section 1070 in *People* v. *Yates* (1983) 34 Cal.3d 644 [194 Cal.Rptr. 765, 669 P.2d 1], but we refused to apply our decision to trials commenced before its finality. Defendant's trial preceded our decision in *Yates*.