Filed 7/1/15  P. v. Stephenson CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B259132 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA098989) |
| v. | |
| TRINAL STEPHENSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Judge.  Affirmed.

Katja Grosch, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Trinal Stephenson was convicted, following a jury trial, of one count of second degree robbery in violation of Penal Code[1] section 211 and one count of attempted second degree robbery in violation of sections 664 and 211. The jury found true the allegations that appellant had suffered two prior serious felony convictions within the meaning of section 667, subdivision (a), and two strike convictions within the meaning of sections 667, subdivisions (b) through (i) and 1170.12 (the Three Strikes law), and had served two prior prison terms within the meaning of section 667.5, subdivision (b). The trial court sentenced appellant to a total term of 16 years four months in state prison.

Appellant appeals from the judgment of conviction, contending the trial court erred in failing to instruct the jury on the lesser included offense of grand theft and abused its discretion in excluding expert testimony on eyewitness identification. We affirm the judgment of conviction.

Facts

At about 3:00 a.m. on April 25, 2014, Mayra Leyva and Monica Guzman returned to Leyva's apartment building in Long Beach after a night out. Leyva parked in the alley behind the building and noticed appellant coming down the stairs. A few minutes later, Guzman saw that appellant was lying down underneath the car next to them. He appeared to be looking at the women. Appellant then appeared by the front corner of Leyva's car. Guzman screamed. Appellant made a "shushing" motion and pointed towards a nearby bicycle. He then walked to the bicycle, grabbed it and appeared to leave.

Leyva and Guzman were afraid, waiting three to five minutes for appellant to leave before getting out of their car. Leyva had her purse on her shoulder and her shoes in her hand. Guzman had Leyva's iPhone in her hand. They walked up a set of exterior

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

stairs to Leyva's apartment.  When they reached the landing outside the apartment, Leyva heard somebody.  She turned around and saw appellant.  Appellant was wearing a bandanna on the lower part of his face, but Leyva recognized his hair and clothing.  Guzman also recognized appellant by his eyes.

Leyva yelled and screamed for her brothers to come outside.  Appellant did not say anything.  According to Leyva, appellant ran by her and pulled on her purse, possibly trying to grab it.  Her memory was not clear.  According to Guzman, Leyva fought with appellant to keep him from taking her purse.  Appellant did not succeed in taking the purse.  Guzman initially testified that appellant next forced the iPhone from her hand, then pushed her out of his way, causing them both to fall down several steps.  When appellant fell, he dropped the iPhone.  Later, she indicated that she might have had the iPhone in her hand when she fell and might have dropped it at that time.  Her memory was not clear.

Both Guzman and Leyva agreed that once the iPhone hit the ground, appellant came back and got the iPhone.  Appellant then left, and Guzman and Leyva went into the apartment to call the police.

Long Beach Police Officer Madison Moss came to the apartment.  Leyva and Guzman were "crying hysterically."  While Leyva was talking to Officer Moss, she discovered a broken cell phone in the street.  She told Officer Moss that she thought it could have fallen out of the robber's pocket.

Officer Francisco Mora looked in the surrounding area for an African-American male wearing a white t-shirt, black shorts and riding a bicycle.  About a block east of Leyva's apartment, shortly after the incident, Officer Mora found appellant, wearing a light gray t-shirt and black shorts and riding a bicycle away from the crime scene.  Officer Mora stopped appellant, but before he could ask appellant any questions, appellant volunteered that he had just been robbed and his cell phone stolen.  Appellant had the back cover to a cell phone in his hand.  The officers later matched this back cover to the broken phone found at the crime scene.

3

Officer Moss conducted a field showup with Guzman, who identified appellant after five to ten seconds, yelling, "That's him. It is the same beard. He is the one that took my friend's cell phone."

Leyva also identified appellant as the robber in the field showup. At trial, she explained that she recognized appellant by his hair, his clothes and the bicycle.

Discussion

1. Theft instruction

Appellant contends the trial court erred in refusing his request to instruct the jury on the lesser offense of grand theft pursuant to CALJIC No. 14.23. Even assuming the court erred, the error was harmless.

a. Applicable law

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Grand theft is the felonious taking of property from the person of another. (§§ 484, subd. (a), 487, subd. (c).) Thus, "[w]here the elements of force or fear are absent, a taking from the person is grand theft, a lesser included offense of robbery." (*People v. Jones* (1992) 2 Cal.App.4th 867, 869.)

A trial court must instruct on lesser included offenses when there is substantial evidence that the offense committed may be less than the offense charged. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) Substantial evidence is evidence from which a reasonable jury could conclude that the defendant is guilty of the lesser offense but not the greater offense. (*People v. Valdez* (2004) 32 Cal.4th 73, 116.)

"[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility. We further determine, in line with recent authority, that such misdirection of the jury is not subject to reversal unless an examination of the entire

4

record establishes a reasonable probability that the error affected the outcome. (Cal. Const., art. VI, § 13; [*People v.*] *Watson* [1956] 46 Cal.2d 818, 836.)" (*People v. Breverman* (1998) 19 Cal.4th 142, 165.)[2]

b. Analysis

Appellant points out that Leyva originally told police that she dropped the iPhone when appellant pushed her and that appellant then picked it up. She testified at trial that she was not sure if she dropped the phone and appellant then picked it up, or if appellant took the phone from her and then dropped it. Appellant also points out that both Leyva and Guzman characterized his pushing of Leyva as an attempt to get her out of his way as he was fleeing rather than an attempt to get the phone from her. He contends that these facts, if believed by the jury, would show that he did not use force to acquire the phone and so committed only grand theft. Thus, he argues, he was entitled to an instruction on that lesser offense.

We question whether, even under appellant's version of events, he would have committed only grand theft. The facts in this case are in many ways similar to the facts of *In re Jesus O.* (2007) 40 Cal.4th 859. In that case, the victim was assaulted after refusing to give Jesus and another juvenile money. The victim was able to escape, but his cell phone fell out of his pocket while he was fleeing. He looked back and saw one of his attackers pick it up. (*Id.* at pp. 861-862.) The juvenile court found Jesus committed grand theft from the person and attempted robbery. The Supreme Court upheld these

---

[2]    We note that appellant relies on *People v. Ramkeesoon* (1985) 39 Cal.3d 346 (*Ramkeesoon*) to argue that an erroneous failure to instruct on a lesser included offense "requires reversal unless it can be determined that the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*Id.* at pp. 351-352.) The court in *Ramkeesoon* is applying the reversibility standard set forth in *People v. Sedeno* (1974) 10 Cal.3d 703 (*Sedeno*). (*Ramkeesoon, supra*, 39 Cal.3d at p. 352.) However, the *Sedeno* standard of reversal was expressly overruled by *People v. Breverman, supra,* 19 Cal.4th at 165. Thus, the *Ramkeesoon/Sedeno* standard of reversal is not applicable.

findings, but noted in dicta that "[o]n these facts . . . it appears the court could have found the juvenile committed a *completed* robbery of the telephone." (*Id.* at p. 869, fn. 2 [original italics].) Thus, it appears that even assuming that appellant inadvertently dislodged the cell phone from Guzman's hand, he committed a robbery when he picked the phone up.

c. Prejudice

Appellant requested, and received, CALJIC No. 9.40.2, which told the jury: "To constitute the crime of robbery, the perpetrator must have formed the specific intent to permanently deprive an owner of [her] property before or at the time that the act of taking the property occurred. If this intent was not formed until after the property was taken from the person or immediate presence of the victim, the crime of robbery has not been committed." Appellant's counsel's theory was that the instruction applied to "the cell phone that was dropped. And he returns to grab it."

If the jury had accepted appellant's version of events, they would have found him not guilty under CALJIC No. 9.40.2. Since appellant was convicted, the jury clearly believed Guzman's testimony that appellant took the iPhone from her hand. (See *People v. Smith* (1995) 33 Cal.App.4th 1586, 1596-1597 [failure to instruct on theft as a lesser included offense of robbery was harmless when jury was instructed with language similar to CALJIC No. 9.40.2].)[3] Thus, there is no reasonable probability that appellant would have received a more favorable result if the jury had been instructed on grand theft.

Moreover, although the parties focused on the force element of robbery, a robbery may also be committed by the use of fear. There is uncontradicted evidence that appellant used fear to complete the taking of the phone.[4]

---

[3]    This case applied the higher, but no longer applicable, reversal standard of *People v. Sedeno, supra*, 10 Cal.3d at 721.

[4]    The trial court used CALJIC No. 9.40 to instruct the jury on the definition of robbery, but did not instruct the jury with the companion instruction of CALJIC No. 9.41

A taking for purposes of robbery is "either the gaining possession or the carrying away" of the property. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8; see *People v. Estes* (1983) 147 Cal.App.3d 23, 27-28.) "'Gaining possession or . . . carrying away' includes forcing *or frightening* a victim into leaving the scene, as well as simply deterring a victim from preventing the theft or attempting to immediately reclaim the property." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771 [italics added].)

Here, appellant approached the women at their front door in the middle of the night. He was wearing a bandana over the lower part of his face and did not speak. His actions were designed, at least in part, to scare the woman. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775-776 [robber induced fear by wearing a partial disguise]; see *People v. Flynn, supra*, 77 Cal.App.4th at 772 [defendant created fear through choice of "moment and location" of robbery].) Both women were afraid.

Guzman's testimony shows that she did not attempt to retrieve the fallen phone because she was afraid of appellant. (See *People v. Flynn*, *supra*, 77 Cal.App.4th at p. 772 ["When the perpetrator and victim remain in close proximity, a reasonable assumption is that, if not prevented from doing so, the victim will attempt to reclaim his or her property. [Citation.]"].) After the fall, Guzman went upstairs towards the apartment "right away," leaving the phone where it fell. Appellant "actually came back to try to get [the phone]." Guzman was afraid, and told Leyva not to yell at appellant because he might have a weapon, and the women could not escape into Leyva's

---

which defines fear. However, "the term 'fear' as used in the definition of robbery has no technical meaning peculiar to the law and is presumed to be within the understanding of the jurors . . . " (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774; see *People v. Anderson* (1966) 64 Cal.2d 633, 640 ["The terms 'force' and 'fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors"].) As the commentary to the CALCRIM No. 1600 states: "Fear was defined in the instruction because the statutory definition includes fear of injury to third parties, and this concept is not encompassed within the common understanding of fear." Fear of injury to a third party was not an issue in this case and so the absence of an instruction defining fear does not affect our analysis.

7

apartment because the door was not open. Appellant ran off, and according to Guzman, "we just decided to call the police right away." Both women were crying hysterically when the police arrived. Since there is very strong evidence appellant acquired the phone by fear, there is no reasonable probability that appellant would have received a more favorable verdict if the jury had been instructed on grand theft.

2. Expert witness

The trial court denied appellant's motion for appointment of an expert witness on the issue of eyewitness identification on the ground that appellant "was arrested in [the] area." Appellant contends the trial court abused its discretion in denying the request and the error was prejudicial. We do not agree.

Exclusion of expert testimony on eyewitness identification is "justified . . . if there is other evidence that substantially corroborates the eyewitness identification and gives it independent reliability." (*People v. Lucas* (2014) 60 Cal.4th 153, 277 [victim's identification of the make and model of defendant's car]; *People v. Jones* (2003) 30 Cal.4th 1084, 1112; see also *People v. Sanders* (1995) 11 Cal.4th 475 [number of eyewitnesses].) Corroborating evidence can take many forms. (See e.g., *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 726 [circumstances surrounding defendant's arrest].) There is no requirement that the corroborating evidence be physical evidence such as fingerprints or DNA.

Here, appellant was arrested about a block from the crime scene shortly after the crimes occurred at 3:00 a.m. in the morning, riding a bicycle away from the crime scene. He was wearing a light gray t-shirt and black shorts. The robber was described as wearing a white t-shirt and dark shorts and having a bicycle. Appellant was carrying the back cover of a phone which matched a broken phone found at the crime scene. One of the victims stated the broken phone at the crime scene had fallen from the robber's pocket. The arrest occurred about 3:00 a.m., a time when not many people are out, reducing the likelihood that there would be two men near the crime scene dressed

virtually identically riding a bicycle and carrying a phone part linked to the crime scene. Thus, the "cumulative corroborative effect" of this evidence is sufficient to give independent reliability to the eyewitness identification. (See *People v. Jones, supra*, 30 Cal.4th at p. 1112 [holding that the testimonies of five witnesses provided a "cumulative corroborative effect" which gave independent reliability to the eyewitness identification even though all five witnesses could be impeached on various grounds].) The trial court did not abuse its discretion in denying appellant's request for an eyewitness identification expert.

Further, even if the trial court abused its discretion in finding sufficient corroborating evidence, appellant has not shown prejudice from the lack of an expert on eyewitness identification. The trial court's ruling did not prevent appellant from presenting a defense that the two eyewitnesses were mistaken in their identification of him. He was able to cross-examine the eyewitnesses and challenge the accuracy of their identifications. Further, the court instructed the jurors with CALJIC No. 2.92, which contains 11 specific factors for the jury to consider when evaluating the accuracy of eyewitness identification. This instruction gave appellant's counsel an ample basis for arguing misidentification to the jury. (See *People v. Datt* (2010) 185 Cal.App.4th 942, 951-953 [counsel can utilize factors listed in instruction to support argument to jury that an eyewitness identification is suspect].)

The three factors which appellant contends undercut the eyewitness identification are all included in CALJIC No. 2.92. Appellant lists the cross-racial nature of the identification as a factor. The instruction tells jurors to consider, "The cross-racial [or ethnic] nature of the identification." Appellant also lists the discrepancies between the victims' description of appellant (light-skinned with hazel eyes wearing a gray shorts and a white t-shirt) and appellant's actual appearance (dark-skinned and wearing a gray t-shirt and black shorts). The instruction tells the jury to consider, "The extent to which the defendant either fits or does not fit the description of the perpetrator of the act." Appellant's third factor is the fact that the identification occurred in a field showup

9

involving only appellant rather than in a lineup with multiple individuals. The instruction lists as a factor for the jury to consider, "Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup." This factor certainly supports an argument that the victims' identification of appellant was less accurate because they did not identify him from a lineup involving multiple individuals.

Appellant has not shown what an expert witness could have added. (See *People v. Datt, supra,* 185 Cal.App.4th at pp. 951-953 [jury instruction on evaluating eyewitness identification can be substitute for expert testimony].) In light of the corroborative evidence supporting the victims' identification of appellant and appellant's counsel's thorough cross-examination of the victims and vigorous argument on the weaknesses of eyewitness identification, it is not reasonably probable the jury would have reached a more favorable outcome for appellant if expert testimony had been presented. (See *People v. Walker* (1986) 185 Cal.App.3d 155, 166-167 [finding that corroborative evidence and defense counsel's opportunity to discuss the weaknesses of eyewitness identifications during closing argument rendered the trial court's exclusion of expert testimony harmless error].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIRSCHNER, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11