Filed 3/9/21  P. v. Quinones CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JUAN MCKOY QUINONES,<br><br>　　　Defendant and Appellant. | D076840<br><br><br><br>(Super. Ct. No. SCD281845) |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon B. Majors-Lewis, Judge.  Affirmed and remanded with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Juan McKoy Quinones of robbery (Pen. Code, § 211[1]) and threatening a public officer (§ 71). After trial, Quinones admitted one strike prior (§ 667, subds. (b)–(i)), one serious felony prior (§ 667, subd. (a)), and one prison prior (§ 667.5, subd. (b)). The trial court struck all of the priors, and sentenced Quinones to three years of formal probation, including 365 days in local custody.

On appeal from the judgment, Quinones raises several claims of error. He first asserts reversal is required because the prosecution presented a legally invalid theory of liability to the jury. Alternatively, he argues his counsel was unconstitutionally ineffective because she failed to request a jury instruction on his claim of right to the property taken. Quinones next contends the court erred by failing to instruct on lesser included offenses. Finally, Quinones asks this court to correct a clerical error in a minute order that incorrectly states the jury found true the prior offense allegations.

As we shall explain, we reject each of Quinones's arguments except for his argument concerning the clerical error in the minute order. We affirm the judgment, and remand with directions to the trial court to modify the August 8, 2019 minute order to remove the inaccurate statement that the jury rendered a finding on the prior offense allegations.

FACTUAL AND PROCEDURAL BACKGROUD

Around 11:00 p.m., Quinones entered a Jack-in-the-Box restaurant in downtown San Diego. He ordered a hamburger and paid with an Electronic Benefits Transfer (EBT) card. While Quinones waited near the counter for his food, another customer came forward to place an order. Quinones asked the customer if he could pay for the customer's order with his EBT card and take the customer's cash. The cashier told Quinones that was not

---

[1] Subsequent undesignated statutory references are to the Penal Code.

permitted.[2]  Quinones responded to the cashier aggressively, stating " 'It is my E.B.T. card.  I can do whatever I want with it.' "  Quinones's demeanor made the cashier uncomfortable, so she asked her manager, who was working the drive-through window, to take over the register.  The cashier also asked the cook to make Quinones's order right away.

The manager gave Quinones his hamburger and again told Quinones he could not use his EBT card to pay for another customer's order.  Quinones became angry, threw his order back at the manager, and asked for a refund.  The manager told Quinones he would give Quinones a refund after he took care of the other customers in line.  As the manager opened the cash register to accept a cash payment from the next customer, Quinones reached into the register and grabbed some of the bills.  The manager grabbed for Quinones's hand to try and take back the bills, but Quinones yanked his hand away and started walking towards the door.

The manager came out from behind the counter and attempted to block the door to prevent Quinones from leaving.  Quinones pushed past the manager, and out the door.  The manager followed Quinones outside, and grabbed a bag Quinones was carrying to try and stop him.  Quinones broke free and kept walking as the manager followed, asking Quinones to return the money.  Quinones then turned abruptly and punched the manager in the face.  The manager felt his "head spinning."  Quinones fled the area.  The manager had bruising on his face for days after the incident.

The cashier called the police, who arrived after Quinones was gone.  The police took a report and the following day, a detective came back to the store and viewed video surveillance of the incident taken by the store's cameras.  A still image of Quinones from the video was circulated, and

_____

[2]     The cashier also heard Quinones say he needed cash to buy drugs.

3

Quinones's parole officer recognized him. The officer coordinated with San Diego police to arrest Quinones. While he was being processed at jail, Quinones repeatedly threatened the arresting officers.

Quinones was eventually charged with robbery (§ 211) and threatening a public officer (§ 71). The amended information also alleged four probation denial priors, a prison prior, a serious felony prior, and a strike prior. After a two-day trial, the jury found Quinones guilty of both charges. Thereafter, Quinones admitted the alleged prison prior, the serious felony prior, and a strike prior. At the sentencing hearing, the trial court, sympathetic to Quinones, struck the priors and sentenced him to three years' probation on the condition he serve 365 days in local custody.

DISCUSSION

I

*Prosecutorial Misconduct*

Quinones first asserts the prosecution presented a legally invalid theory of liability to the jury, requiring reversal. Alternatively, he argues his counsel was unconstitutionally ineffective because she failed to request a jury instruction on the defense of Quinones's claim of right to the money taken.

A

After the close of evidence, before closing arguments, the trial court instructed the jury that robbery is a specific intent crime, which required the jury to find Quinones had the intent to permanently deprive the victim of the property. During her closing argument, the prosecutor argued to the jury that the refund Quinones claimed he was owed for his order was irrelevant to its determination of whether Quinones was guilty of robbery. Specifically, the prosecutor stated "Now, you may be asking yourself, okay. Well, Mr. Quinones entered the store. He used his EBT card. After he didn't want his

4

food because he wasn't getting cash that he said he wanted for drugs, he gave the food back, and at that point, he was waiting for his refund.  And you may be thinking, 'well, the moment he reached into the cash register, he was just making himself whole,' because he had paid with his EBT card.  You may be thinking, 'well Jack-in-the-Box owed him money.' "  She continued, "That's not the way the law applies.  That is not a defense.  Ladies and gentlemen, you will find that nowhere in your jury instruction packet.  …  You do not have the right to go into a store, to go into a restaurant, to go into a tire shop, to go anywhere and just snatch money that you think you are entitled to.  It is not how it works."

During her rebuttal, the prosecutor again emphasized this argument. After closing statements, the court instructed the jury on the elements of robbery and the meaning of each element.[3]

---

[3] The court's instruction, based on CALCRIM No. 1600, stated: "The Defendant is charged in Count One with Robbery. [¶] To prove that the Defendant is guilty of this crime, the People must prove that: [¶] 1. The Defendant took property that was not his own; [¶] AND 2. [¶] The property was in the possession of another person; [¶] AND [¶] 3. The property was taken from the other person or his immediate presence; [¶] AND [¶] 4. The property was taken against that person's will; [¶] AND [¶] 5. The Defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 6. When the Defendant used force or fear, he intended to deprive the owner of the property permanently, or to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property. [¶] The Defendant's intent to take the property must have been formed before or during the time he used force or fear. If the Defendant did not form this required intent until after using force or fear, then he did not commit robbery. [¶] If you find the Defendant guilty of robbery, it is robbery of the second degree. [¶] A person *takes* something when he or she gains possession of it and moves it some distance. The distance moved may be short. [¶] The property taken can be of any value, however slight. Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person. [¶] A store or business employee who is on duty has possession of the store or business owner's property. [¶] *Fear*, as used here, means fear of injury to the person himself. Fear may be shown by circumstantial evidence. Even when the person testifies that he or she is not afraid, circumstantial evidence may satisfy the element of fear. [¶] Property is within a person's *immediate presence* if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or fear. [¶] An act is done *against a person's will* if that person does not consent to the act. In order to *consent*, a person must act freely and voluntarily and know the nature of the act."

B

Quinones asserts that the prosecution's arguments constituted the submission of a legally invalid theory to the jury with regard to the element of intent. He argues that the failure of the jury to be properly instructed on a claim of right to the money Quinones took from the cash register made it possible for the jury to convict him on an improper legal theory. In other words, Quinones contends the jury was incorrectly led to believe that a claim of right would not negate the element of intent. In response, the Attorney General argues the issue was forfeited by Quinones's failure to object to the prosecutor's argument at trial. Even if not forfeited, the Attorney General contends the prosecutor's arguments were not improper because the defense of claim of right was not applicable in this case.

It is "the general rule that a defendant cannot complain on appeal of misconduct by a prosecutor at trial unless in a timely fashion he made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Benson* (1990) 52 Cal.3d 754, 794 (*Benson*); E.g., *People v. Green* (1980) 27 Cal.3d 1, 27–34.) If no objection is made in the trial court, "the point is reviewable only if an admonition would not have cured the harm caused by the misconduct." (*People v. Price* (1991) 1 Cal.4th 324, 447.)

Quinones failed to object to the statements he now claims were improper. "Any harm threatened" by the prosecution's comments "was certainly curable," and Quinones does not contend otherwise. (*Benson, supra*, 52 Cal.3d at p. 794.) Accordingly, the argument was forfeited. However, even if an objection to the statements or request for a claim of right instruction had been made, we would reject the claim on its merits because the defense is not available on these facts.

7

" 'Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery. It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], or that he had a right to retake goods sold [citation] is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it. [Citation.]" [Citation.]' " (*People v. Tufunga* (1999) 21 Cal.4th 935, 943 (*Tufunga*).)

The defense of claim of right, however, does not extend to "robberies perpetrated to satisfy, settle or otherwise collect on a debt, liquidated or unliquidated—as opposed to forcible takings intended to recover specific personal property in which the defendant in good faith believes he has a bona fide claim of ownership or title …." (*Tufunga, supra*, 21 Cal.4th at p. 956.)

*Tufunga* explained the rationale for the rule: " 'The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule [as it then existed, allowing a claim of right defense

8

to any robbery,] the accused must make change to be sure he collects no more than the amount he believes is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation.'" (*Tufunga, supra*, 21 Cal.4th at pp. 954–955.)

On appeal, Quinones argues the prosecutor's statements in closing argument were improper without the claim of right instruction because there was evidence the money he took from the cash register was owed to him. Specifically, he points to the manager's testimony that he would give Quinones a cash refund. For the reasons articulated in *Tufunga*, this evidence does not establish that Quinones lacked felonious intent. Rather, even if he was entitled to money to settle the debt of his returned hamburger, he was not permitted under the law to use self-help to settle that debt. Accordingly, the prosecutor's statements were consistent with the law. For the same reason, Quinones's trial counsel was not ineffective for failing to request the claim of right defense instruction.

## II

### *Lesser Included Offenses*

Quinones next contends that the trial court erred in failing to instruct on what he argues were the lesser included offenses of theft and assault. The Attorney General responds that those instructions were not warranted because there was no evidence to support the theft instruction and because assault is not a lesser included offense to robbery.

### A

Robbery requires that the defendant take by force or fear, whereas theft requires only that the defendant take without consent. (*People v.*

9

*Ramkeesoon* (1985) 39 Cal.3d 346, 351.)  Fear may be inferred from the circumstances of the crime.  (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.)  Further, the use of force or fear to retain property already in the perpetrator's possession and to facilitate escape constitutes robbery.  (*People v. Gomez* (2008) 43 Cal.4th 249, 255.)

Trial courts have a duty, even in the absence of a request, to instruct juries in criminal cases in those principles of law necessary to assist them in understanding the case.  (*People v. Moye* (2009) 47 Cal.4th 537, 548; *People v. Breverman* (1998) 19 Cal.4th 142, 154.)  Courts must instruct juries on lesser included offenses where there is substantial evidence from which a jury could conclude that the lesser offense was committed, and the greater offense was not.  (*People v. Cook* (2006) 39 Cal.4th 566, 596.)  "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."  (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

The fact that "[t]heft is a lesser and necessarily included offense in robbery" (*People v. Ramkeesoon, supra*, 39 Cal.3d at p. 351) does not mean that whenever robbery is charged, instructions on theft must also be given. Rather, only "when the record contains substantial evidence of the lesser offense, that is, evidence from which the jury could reasonably doubt whether one or more of the charged offense's elements was proven, but find all the elements of the included offense proven beyond a reasonable doubt." (*People v. Moore* (2011) 51 Cal.4th 386, 408–409 (*Moore*).)

On appeal, we independently review the record to determine whether there is substantial evidence that could support a finding of guilt on a lesser offense.  We do not assess credibility or decide whether a jury should convict on the lesser offense.  Our concern is only whether the evidence is substantial

10

such that a jury could reasonably choose the lesser of the offenses. (*People v. Manriquez* (2005) 37 Cal.4th 547, 587.)

B

Here, the prosecution presented evidence in the form of testimony from the manager and cashier, and the surveillance video, establishing unequivocally that Quinones used force to steal cash from the register. Specifically, the evidence showed that Quinones pushed the manager's hand away from the register to take the bills, then pushed past the manager out of the store's door, and finally that Quinones punched the manager in the face as Quinones fled. Quinones did not testify himself and called no witnesses on his behalf at trial. In his appellate briefs, Quinones only directs us to statements made by the trial judge at the sentencing hearing after the jury's verdict was rendered and a statement by the manager at trial that at the moment Quinones struck him, he had turned to go back inside the store.

Quinones asserts "one way to read the evidence is that [his] use of force against the nighttime manager was singly and separately motivated by his anger at being mocked, following the taking." In support of this theory, Quinones cites the statements of the trial judge at the sentencing hearing suggesting the store employees might have been mocking him and that Quinones could have punched the manager because he was "fed up" with the way he was being treated in life. These statements were made by the court to explain its rational for striking Quinones's priors. They were not evidence presented to the fact finder during trial. Thus, they do not support a theft instruction. (See *People v. Stanley* (2006) 39 Cal.4th 913, 961, fn. 10 [" 'It is axiomatic that argument is not evidence.' "].)

The only actual evidence Quinones cites to support his argument is the manager's statement at trial that Quinones struck him after he turned

11

around to go back inside the store.  The manager testified that Quinones ran toward the drive through and he followed, yelling to Quinones to give the money back.  The manager then stated, "I ran to the drive-through.  He kept walking.  I went back.  I went back.  That's when he turned around, and he struck me … in the face."  The prosecutor next asked if "just prior to him hitting you in the face, were you still asking him for the money back?"  The manager responded "[no].  I was headed inside."  The video surveillance, however, shows clearly that the manager was actively pursuing Quinones when Quinones turned and punched him in the face.

Given this clear video evidence, we reject Quinones's assertion that a reasonable interpretation of the manager's testimony was "that the theft and the later punch were two independent acts."  Rather, on this record and as Quinones's defense counsel argued, Quinones "was either guilty of robbery or he was not the perpetrator and was innocent of any crime." (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 705.)  Because there was not substantial evidence from which the jury could have found Quinones guilty of theft rather than robbery, no instruction on the lesser included offense was warranted.  (*Moore, supra*, 51 Cal.4th at p. 409; *People v. Jones* (1992) 2 Cal.App.4th 867, 872.)

## C

Quinones next contends the jury should also have been instructed on assault as a lesser included offense of robbery.  "To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the 'elements' test and the 'accusatory pleading' test) must be met." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)  "Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is

necessarily committed." ' " (*Id*. at pp. 288–289.)  In other words, "if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense[,]" the trial court is required to instruct on the lesser offense. (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

Quinones asserts that because he was charged with "accomplishing the taking by means of 'force and fear,' assault was a necessarily included offense under the accusatory pleading test."[4]  As Quinones recognizes, this logic was considered and rejected in *People v. Wright* (1996) 52 Cal.App.4th 203 (*Wright*).  *Wright* reasoned "force" in the context of robbery did not necessarily mean physical force; it could be constructive force, i.e., fear.  (*Id*. at pp. 210–211.)  *Wright* explained, " 'force' is not an element of robbery independent of 'fear'; there is an equivalency between the two."  (*Id*. at p. 211.)  On that basis, *Wright* concluded that an allegation of robbery encompassing both "force" and "fear" did not warrant an instruction on assault as a lesser included offense:  "Since the element of force can be satisfied by evidence of fear, it is possible to commit a robbery by force without necessarily committing an assault.  Consequently, under the 'accusatory pleading' test, assault is not necessarily included when the pleading alleges a robbery by force."  (*Ibid*.)

The Supreme Court has cited *Wright* twice on this issue, though it has not commented on *Wright*'s reasoning because it found in each case that no substantial evidence supported an instruction on the lesser included offense, even assuming the accusatory pleading test were satisfied.  (*People v. O'Malley* (2016) 62 Cal.4th 944, 984–985; *People v. Parson* (2008) 44 Cal.4th

_____

4    The accusatory pleading here alleged Quinones "did unlawfully and by means of force and fear take personal property from the person, possession and immediate presence of [the manager] in violation of PENAL CODE SECTION 211."

13

332, 350.) We likewise have no occasion in this case to consider the reasoning in *Wright* because we conclude that even if the accusatory pleading test were satisfied, and even if substantial evidence supported a finding that Quinones was guilty of assault but not of robbery (see *People v. Casteneda* (2011) 51 Cal.4th 1292, 1327–1328), any error in failing to instruct the jury was harmless.

"In noncapital cases, 'the rule requiring sua sponte instructions on all lesser necessarily included offenses supported by the evidence derives exclusively from California law.' [Citation.] As such, 'in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836].' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955 (*Beltran*).) " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*Ibid*.)

As an initial matter, we note that the mere fact we assume substantial evidence supported the lesser included offense instructions (i.e., a reasonable jury could have found Quinones guilty of assault, but not of robbery) does not in and of itself establish prejudice. "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*Beltran, supra*, 56 Cal.4th at p. 956, italics omitted.)

14

Here, the evidence supporting the jury's robbery verdict was overwhelming. The Jack-in-the-Box employees told police immediately after the incident that Quinones stole bills from the cash register and punched the manager in the face to get away. As discussed, the employees both testified that Quinones grabbed the bills from the register by pushing the manager's hand out of the way, pushed through the manager to leave, then punched the manager in the face as he fled the scene. This testimony was supported by the surveillance video showing the same. By contrast, the evidence supporting a finding that Quinones merely committed assault unconnected to the robbery is meager. Quinones points again to the statements made by the trial court at sentencing, after the conviction, and the manager's statement that he had turned to go back inside before the punch. Quinones, however, concedes the manager's statement was contradicted by the video and that at best the statement showed "he *might not* have punched the manager for the purpose of resisting or accomplishing [the] taking." (Italics added.) Further, Quinones's other actions—pushing the manager's hand and pushing past the manager out of the store—supported the verdict.

The evidence that there was an assault separate from the robbery was scant. Accordingly, Quinones has not shown he would have achieved a more favorable result if the jury had been instructed on assault. Any error was therefore harmless under *Watson*.

### III

### *Correction of Clerical Error*

Quinones brings a clerical error in the trial court's August 8, 2019 minute order to this court's attention and asks that the order be corrected. The Attorney General does not oppose the request. The order incorrectly states that Quinones was found guilty of "all counts & priors by jury."

15

Quinones, however, admitted the relevant priors. Quinones states that correction is needed because his admittance of the priors could be relevant to any future sentencing proceedings.

We agree correction of the record is appropriate and remand to the trial court to make the correction. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [" 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. … The court may correct such errors on its own motion or upon the application of the parties.' "].)

DISPOSITION

The judgment is affirmed, and the matter is remanded with directions to the trial court to modify the August 8, 2019 minute order to remove the inaccurate statement that the jury rendered a finding on the prior offense allegations.

McCONNELL, P. J.

WE CONCUR:


AARON, J.


GUERRERO, J.

16